next case in our calendar is Richards versus County of San Bernardino Weisberg you're first and please let us know how much you want to reserve in time for rebuttal. Thank you your honor. Good morning and may it please the court Caitlin Weisberg on behalf of Plaintiff Appellant William Richards. I'd like to reserve five minutes for rebuttal please. In this wrongful conviction case Plaintiff has presented evidence that he is innocent and that he was only convicted because the defense in this case violated his due process rights. When I read the district court opinion a few things jump out at me that I think are important for understanding the summary judgment appeal. First the district court pervasively misunderstood the nature of plaintiff's claims and the evidence in this case. Reading through the court's analysis for why I granted summary judgment statement after statement describing plaintiff's evidence are just factually incorrect. We point out a couple of examples in the opening brief but there are many more. Because the district court didn't really understand the claims it was ruling on or the evidence underlying those claims its analysis is simply inapplicable to the reality of this case. Second the district court primarily relied on its erroneous causation mode of analysis to enter judgment on each and every claim. Again and again it returned to this on these legally erroneous bases for summary judgment the court didn't even truly consider the merits of plaintiff's claims or the evidence underlying them. The factual analysis was cursory and as I stated largely erroneous. Third at every opportunity the district court expressed skepticism about plaintiff's claims and facts while giving the defendants the benefit of the doubt and the benefit of its own speculation about what might have happened. This was not based on the evidence presented and it was the reverse of the district court's obligation on the summary judgment stage. Summary judgment is not intended to be a paper trial on the merits of a plaintiff's case but that is how the district court treated it and that is what the district courts ruling is. A bench trial without the benefit of live testimony cross-examination or even coherent presentation of the evidence. This approach to summary judgment was error. If properly credited plaintiff has presented evidence the defense in this case acting individually and jointly with one another repeatedly and consistently manipulated the evidence in their investigation to inculpate Richards. The defendants actions were deliberate and it was the false evidence generated by the defendants the prosecution relied on at trial to convict Richards. The civil jury in this case is entitled to believe based on the record that the defendants were aware of the falseness of their own evidence and that this consistent pattern was neither accidental nor negligent but rather a concerted effort to convict Richards who they believed to be guilty. As this court and others have recognized over and over again no system of ordered liberty can tolerate the state cooking up its own evidence whether or not the defendant is guilty. In this case as you know plaintiff has presented strong evidence of his innocence. Counsel you're arguing at a very high level of generality here and you've got by my count at least a dozen maybe more specific issues that we have to decide in your appeal. So I'd like to take one of them just as an example your claim against Dr. Sperber and I have a I guess a question first as to whether or not he's even a state actor for section 1983 liability and the second is the fact that he gave a limited opinion which was to the extent that he couldn't expressly attribute the bite mark to your client but he couldn't rule him out either and your own expert agreed with that that that it was inconclusive so I'm trying to find where the constitutional violation is to support either state actor or a violation of Richard's constitutional right based on the expert testimony being inconclusive. Well first the district court correctly held below that Sperber was a state actor there's consistent authority for the fact that a forensic analyst doing investigating evidence on behalf of the state is is carrying out a state function when he's that. Sperber was hired... Would your argument be the same if evidence is sent to an outside laboratory for analysis say a blood alcohol draw? Absolutely. Would the lab be a state actor? Absolutely your honor when when the the the employment relationship with the entity or individual analyzing the evidence is irrelevant for a state within the state structure and the state's duties that that determines state action and this... So any outsider any outsider who is engaged to provide any service in connection with the prosecution makes them a state actor? Is that the scope of the rule you're proposing? I'm the scope of the rule I'm proposing is that when forensic analysts are hired by the state to analyze evidence in a criminal investigation they are acting under color of law for purposes of section 1983 and that has been held multiple times including in the Brewer case cited by the by plaintiff including in the cam state case cited by plaintiff. The the standards on state action are are clear in this context. All right how about the constitutional problem and what where's the constitutional violation of mr. Richards of rights here by giving an inconclusive opinion? The opinion two things your honor first of all in the opinion was not inconclusive the opinion was inculpatory and it was wrong it was diametrically wrong. It's inculpatory only to the extent that it says I can't say it's his but I can't say it's not. He did... So your view is that's inculpatory? He did not... two things your honor yes my view is that is inculpatory because in fact the evidence demonstrates that it could not be Richards. The injury the bite mark injury evidence rules Richards out that's the evidence is presented so suggesting that it doesn't rule him out is false. And counsel that didn't come later when Photoshop and other enhancements were used to the admittedly distorted autopsy photograph and people and the two experts were able to conclude that it was not in fact a bite mark and then Sperber Sperber withdrew his opinion so again where's the concept how can you show that he knowingly violated Richards constitutional right on those facts? How could a reasonable jury so conclude? Your honor this this very question what the difference between consistent and match was addressed in at least two of the cases that are cited by the parties Gregory versus City of Louisville and Pierce v. Gilchrest and in both cases the analyst testified that they were consistent that the those are both hair hair cases hair comparison cases but when you're doing comparison analysis the standard for for the evidence being admitted is usually that is consistent they can never say it's 100% a match or a hundred percent not a match it's the consistent is the sculpt is the inculpatory evidence that was later proven to be false and the fact that it was proven definitively to be false during the habeas doesn't mean that it wasn't already false and that Sperber didn't already know was false. What's your evidence on this record that he knew that don't you have to show that I think that's I think that's what I understood the district court to be doing when it kept asking you know why why would this particular defendant have engaged in such behavior unless he had a motive to to harm Richards. I'm simply trying to assist in the criminal prosecution of somebody they thought had murdered his wife. Well I want to respond to several parts of your question if you'll allow me. First putting a sum on the scale of evidence putting a sum on the scale testifying to the inculpatory of valid value of evidence beyond the ability of that evidence is is deliberate it's deliberately indifferent and that's what we have to prove in this context that he knew it was false that he affirmatively in his brain said I know this is false while I'm doing it or that he was deliberately indifferent to the falseness or reckless to the falseness and that subject wasn't he subjected to cross-examination at trial in front of the jury on the inherent unreliability of bite mark evidence. No absolutely not he was not and in this case your honor and this is one of the other parts trial because trial counsel didn't take the opportunity to cross-examine the expert so this is an ineffective assistance of counsel situation. No your honor Sperber generated this false evidence Sperber is responsible for the evidence that he put before the jury and the evidence your honor that he knew it was false and or was deliberately indifferent or reckless as to his truth or falseness is his own expertise and his own prior writings on the subject. Defendant Sperber wrote ten years before he gave this testimony that you should not use distorted photographs for bite mark comparison because they are unreliable. Sperber testified admitted that this photograph was just about the worst photograph he'd ever tried to use for bite mark comparison. Sperber stated himself that he made these errors because he was trying to be the hero he was trying to secure the conviction of somebody. Those are all that's all evidence the jury can use to false or that he was acting with reckless disregard for the falseness of the opinion he was bringing before the jury and to defend and to plaintiff's rights and beyond that your honor. Let's move to Detective Navarro's drive test. Counsel I've seen innumerable criminal cases where detectives have timed drives from work or some location to where the crime was committed in order to try and time to commit the crime. What where's the constitutional violation there? Your honor in those circumstances presumably the police officer has to provide accurate information about the drive test that he did. In this situation defendant Navarro conducted a drive test where he drove as fast as possible. This was not a objective test as he portrayed it to be. He drove as fast as possible to increase to maximize the amount of time they could claim Richards had to commit this. I thought his testimony was he drove at the he drove with the rate of traffic which which could have been in excess of the speed limit. Was that his testimony? He later admitted his deposition that he drove as fast as possible. Well yeah but if that's at the flow of traffic isn't that the same thing? I mean no your honor. Was he cross-examined on his drive test in front of the criminal trial? Yes your honor and in addition his the falsity of his evidence is that he stated that he drove to the crime scene which is a significant distance from the place where he actually drove to which was the entrance to the property. Was that explored in cross-examination with the criminal trial jury? That one I believe was. That he stopped at the bottom of the hill. Correct but it's not a Brady claim your honor it's a false evidence claim. Isn't he absolutely immune for the testimony that he gives at the trial? We're not suing him for the testimony he gave at trial. Well you're trying to suggest that he violated your client's constitutional rights and it sounds to me based on your answers to my question that you're acknowledging that the jury that convicted him knew all the defects according to you in the drive test. So again where is the constitutional violation here? The fact that he he tried to do it but it was it was disclosed on cross-examination? I think your honor now you're talking about materiality and that is a certainly a fair question to raise and the issue here is that... I'm not talking about materiality counsel I'm asking you what constitutional right is being violated? The constitutional right not to have police officers create and present false evidence against you that they know that they know or is false or that they're deliberately indifferent to its falseness. The use of false a plaintiff an accused should not have to defend himself against false evidence. It distorts the fairness of the trial process. Instead of it being an agreement about what the true facts are it's a Counsel how can it be false evidence if it's revealed in front of the jury on cross-examination? So that the jury understands that he drove faster than the posted speed limit and stopped at the bottom of the hill instead of driving up to the top of it to the crime scene. This is the Lisker case your honor and the creation of false evidence the creation of false statements and police reports all of those things violate due process regardless of what happened at the trial. Your argument is he fabricated evidence and my question is how can you fabricate evidence if the trier of fact knows all of the true facts? Your honor. How is that how's that a lie? Because your honor they he continued to assert that Richards had 11 minutes to commit the crime. The false evidence was presented to the jury and it was argued in closing argument and it was part of what convicted Richards. The jury was entitled to reject it but they didn't and Richards should not have had to defend against it because it was false. All right you go ahead Judge Lopez. How does sort of pursuing the line of questioning of Judge Paulman with respect to defendant Morris you cite the fact that he he's acknowledged that he died of death because he was in the A.M.T. he hit out other dying people in his arms and so forth. But that that that testimony was offered at trial doesn't the absolute immunity from the context in which he made those statements doesn't that compromise your effort to try to make a constitutional argument out of that? How do you propose to use that testimony to create a constitutional claim? Your honor we are not asserting a false evidence claim based on Norse's perjury. Norse's perjury about his E.M.T. military E.M.T. experience is relevant to demonstrating his mental state as to when he created the false time of death evidence. Doesn't absolutely immunity preclude that type of use as well? Are you saying immunity only only applies to actually charging with perjury? His false time of death testimony is the false evidence that we are challenging and defendants have said well he didn't know it was false he's just a layperson he's making observations and we're saying no the jury can reasonably infer that he wasn't just making observations. The jury can reasonably infer that he falsified the evidence deliberately because he later came up with lies to cover up his the false evidence. So the perjury is material evidence for his mental state regardless of whether he can ever whether he can ever be charged with perjury or whether a plaintiff can ever obtain liability based on his lies about his E.M.T. background at trial. And in addition as the district court even recognized Norse suppressed impeachment evidence regarding his military background and the true facts of his qualifications and experience. That's all a viable Brady claim separate and apart from any absolute immunity he has for trial. And again this is all this is all addressed in the Lisker opinion. I can provide the court with that citation but Lisker explains the limits of absolute immunity and it does not extend to pretrial fabrication and it does not extend to the use of evidence to prove mental state sufficient for a jury to return return a verdict on that issue. And I am more than happy to argue these issues because I because I believe in them I think the evidence backs up plaintiffs position but ultimately this these are questions for the jury whether Sperber knew or didn't know that he was that his opinion he was giving was false is a question for the jury and they can infer that he knew it based on the evidence that's presented. Whether Norse knew that he was creating false time of death testimony that he then used against Richards is a question for the to establish that the time of death was prior to 11 p.m. yes you do yes and what does your expert say the time of death was and on what basis that did the expert opine that because my concern here is that we don't have a core temperature taken until well I don't even think they tried at 1030 in the morning when the coroner finally showed up so on what basis besides lividity and mobility of limbs and that sort of thing would your expert be able to rely on to establish time of death your honor I want to preface my statement that this case is incredibly complex the facts of this case are incredibly dense and complex and I would not expect your honors to be able to encompass all of it and the district court below certainly didn't encompass all of it the time of the victim had significant bruising all over her body bruising is something that only occurs when someone is alive when they're pumping blood so those bruises had to have become visible while she was still alive bruising takes minutes to become visible with these deep bruises in her thighs it takes an extended period for bruising to become visible so the attack on her had to be a longer period of time than Richards had this is why the 11 minutes this is one of the many reasons why the 11 minutes is so critical and why it makes a difference whether it was 11 minutes or 8 minutes or 5 minutes or 2 minutes so that time of death testimony is available there is evidence of swelling in the brain again swelling is something that can only occur when it when when a victim is alive and it has to occur over a period of time so the existence of this swelling demonstrates the victim was alive for a period of time during the attack that is just inconsistent with Richards being there so that kind of evidence in addition Norse's own statement that the body was not warm not cold supports an inference that she had been killed earlier in time because she would have been that ambivalent not warm nor cold is actually more consistent with her having died earlier this this evidence is all in the record there on these on these complicated forensic issues this evidence is all in the record in fact on the bite mark evidence there is no one no one who supports the that his evidence was wrong and was not recklessly indifference to the falsity of the inculpatory evidence he he presented but else if I can ask I know you're over time we'll give you a few minutes for rebuttal one question I had was about the blood spatter experiments which I know your expert claims it was scientifically indefensible it was wrong such that it's amounts to fabrication but maybe I'm not looking at the right place but when I look at the expert report I think it's mr. palm Bach means largely conclusory and he doesn't have any it's about 12 pages it doesn't seem to state much more darn footnotes to principles I mean seems very vague and to claim that a experiment is so flawed that's so beyond the pale that amounts of fabrication that seems to be a very high bar and I don't know if that expert report does that and I look at it I see his conclusions but there just doesn't seem to be enough meat there where you can look at and say gee yeah the six those blood spatter experiments were completely flawed and just so indefensible such that it amounts of fabrication yeah Tom Bach mr. palm Bach put his qualifications in his report and he put his reasons for the blood spatter conclusions in his report as well as the deposition deposition testimony which is also part of the record he expanded on all the explanations for why those experiments were scientifically indefensible and one of those reasons is that they shouldn't have ever been done in the first place the blood spatter evidence was facially exculpatory that if you look at the pictures I don't know if you've taken an opportunity to look at the pictures but you can you can't even see any blood spatter in the pictures where the blood spatter is supposed to be it's these microscopic dots that was ever claiming was blood spatter and when you compare that to the crime scene where there is significant blood spatter huge blood spatter in all directions of the victim there's just no consistency between the crime scene and what defendant we're going as claimed was blood spatter on the clothing which was itself disputed whether that was even blood spatter at all so there was no scientific basis to try to conduct an experiment to prove something contrary to what the evidence already showed then when you got to his actual the experiment he actually did it bore no relationship to any information he had about the crime event which he didn't so and was that was mr. Gorgonis cross-examined on these issues at trial again yes of course the defense had a blood spatter expert that said that said Gorgonis was wrong of course but that made it a battle of the experts and the juror the jury was then trying to decide which expert it wanted to go with when there never should have been any false evidence presented in the first place. I guess the thing I'm stuck with is you know here you're just not trying to discredit the expert as in a you know typical you know so even civil criminal case where well my expert is right your expert is wrong and you're saying their expert is just so fundamentally wrong so indefensible that amounts to fabrication it's not just you're wrong you use the wrong assumptions you didn't consider this it's it is so indefensible that it's fraud it's fabrication and I'm not sure I see that that's such a high bar it's not like the you know the blue-fiber evidence where you can say they put the evidence there but this is so egregiously bad and wrong and if that's the case your honor I understand I completely understand every single forensic evidence case you look at whether it's Galbraith or as I said Gregory Louisville or Pierce v. Gilchrist those are all cases where experts are fighting on whether the evidence is false and also fighting about whether the the expert should have knew and should or should have known it was false knew or was deliberately indifferent to the falseness. Plaintiff has presented sufficient credible evidence to reach a jury on that issue and a jury is entitled to make that call. These Sperber and Gregonis and Norse even though he was completely unqualified and not an expert put this evidence before the jury and that was the that was the evidence that the jury used to convict Richards they disbelieved Richards experts at that background presented themselves as qualified and legitimate in giving these opinions when these opinions were wrong they were there's no dispute about the fact that they were wrong. Counsel let me just add very quickly I know we're over time but we haven't really talked about Gregonis very much we are with the blood spatter evidence but then there's the blue-fiber issue I mean I I gather there your argument is that the district court really went off the rails there because in the presence of what you would call direct evidence of fabrication the district court said well there are other explanations that might be as plausible or more plausible which is an approach which I would have to acknowledge is completely incompatible with some judgment and I gather your position is there's direct evidence because at the time of the autopsy there was no evidence of any blue fiber under the fingernails of the victim but there's evidence that Mr. Gregonis checked out the items that he used and do the to that photograph him actually finding the blue fibers that all he alone checked that out it's only then that the blue fiber is detected so your argument is at least there was a jury issue of direct fabrication and the district court took that case from the jury is that essentially your argument yes absolutely your honor the only thing I would correct is there is affirmative evidence that the blue fiber was not there at the autopsy right so it's not just an ambiguity about whether it was there or not yeah so so yes that is plaintiff's argument and also I want to clarify every single type of false evidence claim in this case is a direct false evidence claim this was I think we're well I'll give a couple minutes for rebuttal thank you very much thank you your honors may it please the court contrary to appellants counsel's representation we we don't agree that all of the evidence is admitted as false and untrue particularly with the Devereux standard that appellant has to meet to prove intentional fabrication here there is intent required that the investigation or prosecution was continued despite the fact that they did not know that there were in fact a lot of reasons some of them not admissible to the criminal jury but a lot of reasons why the detectives deputies and everyone believed that Richard was guilty there was a history of domestic violence none of that went to the jury people had seen bruises and been told about abuse including a therapist that she was going to the couple were talking about divorce Pamela had a boyfriend they were splitting assets they'd had a lot of fights about money Richards closed the couple's checking account a week or so earlier they had arguments Richards blamed Pamela for their financial situation not long before the murder someone had come to the property to repossess the vehicle and Richards threatened him with a gun he blamed that on Pamela none of the neighbors heard the couple's four dogs barking that night which they lived in a very remote area no reason anyone would have found that property without seeking it out and the dogs should have barked if it was someone who was not known to them the night before the murder Richards moved to the shotgun they kept for protection from its regular place and when Pamela was laying there dead Richards moved and Pamela's body with a sleeping bag his account of cradling Pamela's head in his lap didn't match the blood evidence he would have had a lap full of blood from her head wounds but instead he had medium-impact spatter on his shoes and pants you don't get medium-impact blood spatter when you show up on the scene 10 minutes 20 minutes 30 minutes or hours after someone dies he didn't call 911 until Pamela's boyfriend called to try to talk to her and he failed a polygraph again that's not admissible in a criminal trial but as part of the reasons the detectives really thought he was guilty and think and think so to this day his conviction was overturned because of bite mark evidence later being discredited but that doesn't mean he didn't kill his wife but anyway the he's innocent that was not part of what the district court had to decide it had to decide whether the standard for fabrication was met for example also would you please explain why with respect to defendant Gorgonis there wasn't there was not a jury issue there for the reasons that I believe I suggested in my question to opposing counsel it really does seem like sure the district court quite clearly took from the jury an issue that should have been before them what what why is that an inaccurate perception of the state of the record the summary judgment record well this case Richard was convicted in 1997 before touch DNA and a lot of things evolved with regard to here Gorgonis had the blue fiber he only discovered it when he looked at the severed nail under the stereo microscope it was not seen at the autopsy because they're looking at the macro level the counselor there was testimony on the other side of the issue that these fibers were long enough they would have been visible to the naked eye isn't that in the record after the fiber was removed from underneath the fingernail it was less than 1 8th of an inch on that but it was visible to the naked eye after it was removed it was not visible to anyone before it was removed and it was not appreciated by anyone until they got the severed finger under the stereo microscope now appellants counsel provided expert testimony at depositions and in reports it created an issue of the expert saturated photos from the autopsy with blue to try to show that you know there was or was not in their case a blue fiber underneath the fingernail but we don't have photos from underneath the fingernails they're looking at on top of the fingernail adding blue coloring and trying to taken out the autopsy from a regular camera doesn't mean that something's not going to be visible later under a stereo microscope we submitted to this court and the district court had it the video of Kurgonis removing the fiber from underneath the nail when he removed the fiber the nail cracked it would have been impossible for him to place that fiber without the the fingernail cracking in the first first instance and that's why we submitted the video to show that there was no fabrication there was no planting of a fiber I'd also submit that if if someone were going to fabricate evidence and plant a fiber it would not be from blue chambray denim which is one of the most common fibers in the world there was no way they could match it to the shirt they just said it was consistent with the same type of material but they didn't say it was definitively from that shirt. Can you address the district courts reasoning that it was the bite mark evidence not the blue fiber evidence that was necessary to convict Mr. Richards I mean the court used a but for causation which I'm not sure if that's the right standard but even if it did apply I'm not sure how it applies here because you had three different juries you maybe had exact same jury you tried it before the same jury three times that maybe could you know conclude it was the bite mark evidence in the third trial so that was a difference but you had three different juries you know who knows what they considered so I just don't see even if even if the but for causation standard is applied I don't see how the district court could have concluded it was the bite mark evidence not the blue fiber that was the but for causation for the verdict. Yes your honor well the district court essentially followed the Court of Appeals reasoning that when they remand when they overturned the conviction saying that since the jury the last jury heard the bite mark evidence that maybe that made the difference to the I think you know you're correct that we won't know exactly I will point out the jury didn't hear a lot of evidence of guilt that would have probably resulted in a verdict the first time around like the domestic violence evidence but our position is that none of this evidence was fabricated sufficient to meet the Devereux standard for example the Navarro drive test that we talked about all of that weaknesses with the testing came out on cross the criminal defense had their own expert who drove and he testified about that that his drive times so the jury had all of that information before them there was nothing false about it. Excuse me are you saying I mean you keep talking about the Devereux standard the suggestion are you saying that under Ninth Circuit law if there is what a plaintiff would characterize as direct evidence of fabrication it's also the plaintiff's burden to show that the defendant had a motive to fabricate that that somehow is in the central element of the proof in order to prove fabrication is that is that your position well your honor I don't see any actual direct evidence of fabrication they claim that things are times so what's fabricated about that? At least I'm talking about Gregonas right now. Okay and in terms of showing direct evidence of fabrication they have an expert who 25 years later tries to saturate photos taken at the autopsy from the top of the of the fingernails whereas the blue fiber was found under a fingernail and you know removed with very small tweezer type implements. Okay counsel let's say let's say the evidence is circumstantial and I can understand the argument that proof of motive would be helpful to a circumstantial case of motivation but are you saying that even if the evidence is circumstantial motive has to be an essential part of the circumstantial evidence in order to it says that the officer is supposed to have knowledge known or should have known that plaintiff was innocent and continued anyway so there is some motive as required there it's not just if we have here for example we're taking a criminalist who's making up his life's work working for the state he's not he's not earning a ton of money why would he plant such a fiber if we use circumstantial evidence by letting some plaintiff's expert come 20 years later and question it an expert who's retained by the plaintiff and the plaintiff now has a financial incentive to that he's suing for not to overturn his conviction but to to get financial compensation he's seeking a million dollars a year let's say for wrongful incarceration of course you're going to get experts to support circumstantial evidence of fabrication for all of these things we had experts on the opposite side but how can you conclude that their expert is correct when nobody had photos underneath the fingernails nobody had microscopic examination of the fingernails that would have given you the same micro rather than macro view of what was in the fingernails or underneath the fingernails in this case with regard to dr. Sperber the district court relied on out-of-circuit authority to find that he was a state actor it's quite a reach it's one thing when you have lab analysts who are doing blood work or something but here odontologists they're giving their opinion based on the evidence dr. Sperber's opinion was very limited he said that the photo was not good it was not at 90 degrees and he opinions about the consistency of the teeth he did not say it matched he did not say to a reasonable degree of certainty he just said it was consistent that was the same exact opinion given by the criminal defense expert dr. Golden he said it was consistent with the teeth he also said that the photo photograph was bad and should not be relied on but he reached the same level of certainty about the bite mark dr. Sperber was not hired to help convict Richards he was hired because the criminal defense retained dr. Golden to opine about a bite mark on the arm he was retained only as a rebuttal expert in response to the defense getting a dental expert so this this wasn't something that was proffered just for the sake of obtaining a conviction it was in response and dr. Sperber he had he had learned from him counsel you uh I know the district court did not get into qualified immunity it didn't have to given all of its findings you you seem to assert that qualified immunity would be an alternative basis yes well can I ask how would that how work with respect to mr. Greg Gonus how how could he understanding the theory there is that there was fabrication of evidence either supported by direct or circumstantial evidence how how could you argue that the law is not clearly established that it's unconstitutional to fabricate evidence to try to convict somebody how would qualified immunity work there well it is clearly established that you can't fabricate evidence intentionally to try to convict someone but Greg Gonus he followed the law and procedures in terms of video recording what he did he had a clear record of removal of the fiber which was so wedged in there that it broke the fingernail when it was removed he he also with regard to the blood spatter he performed he was trained in blood spatter analysis he performed an experiment the criminal defense expert could have done the same experiment he was subject to cross-examination there's nothing improper about doing an experiment to try to recreate the blood spatter and it showed that if you have a cinder block it's going to block some of the blood so it explained why Richards had medium impact blood spatter on his shoes and on the lower part of his pants but not above there with regard to the time of death the county didn't do and still doesn't do liver temperature testing because it's unreliable plaintiff has claimed at times or Richards has claimed at times that because of phone calls he must have died earlier but a person doesn't have to answer the phone that's really not limiting I'm sorry did you did you say that that the county medical examiner still doesn't test for internal temperatures when they're doing an autopsy correct not with liver temp because they've been proven scientifically unreliable we'd have the opposite claim if you know they did take a liver temperature we've been there be claims that because of the temperature at the night or that that she was covered up with a sleeping bag or that that altered the the timing of the death somehow that's one of the problem with internal body temperatures they're not there are a lot of different factors that influence the rate at which the body cools it depends on both external temperature and as you say other things like putting a sleeping bag over the body correct and if the person's been in a struggle for example they may have an rigidity I mean here the opinions that deputy Norse gave could have been given by a layperson he felt her wrist didn't feel rigid felt neither warm nor hot and nor cold those are opinions that really could have been argued either way I mean they gave them they still the defense still argued that it was hours earlier that she was dead Richards came Richards told the responding deputy Norse that she was cold stone-cold that she'd been dead for hours clearly that wasn't true the blood was still you know fresh not coagulated the body was neither hot nor cold but it doesn't require an EMT or any kind of medical training to tell you that and deputy Norse did have EMT training just while he was in the military not in the military so counsel may I ask this no there were several trials this this testimony of officer Norse that that he later acknowledged was false about his prior training his prior EMT experience and so forth did he repeat that testimony that each one of these trials that took place to the best of my memory your honor and I'm sure miss Weisberg will correct me if I'm if I'm incorrect on this but I believe so you know just so you understand the purpose of my question I mean is there any indication that the county which was a defendant here but they that they understood that that testimony was false in the way that he later acknowledged is there any evidence in the record to that effect no your honor they didn't have his military records plaintiff's counsel or Richards counsel on the civil suit subpoenaed military records and questioned him about you know responding to the plane wrecks and things like that he he did have EMT training while he was in the military but not as a part of the military so it's not as false as Richard's counsel would have you believe and also I believe it's in the record that while mr. Norse was being deposed he had significant health issues and possible dementia so we have some I thought that testimony came out only at the last trial about the EMT and is having seen deaths from air crashes it may be your honor I don't have a recollection of that there there are that's what we discovered I colleagues don't have any further questions I think this place first we're bottle thank you I will do my best to be fast I'm struggling here because so much of what defense counsel stated is disputed by evidence in the record so I'm going to start with the blue fiber just defense counsel stated that the blue fiber was underneath the fingernail that's not just disputed that's just wrong if you look at the videotape that we're going as took the blue fiber is shot from underneath the nail video is shot from on top of the nail and we put screenshots of that in the record and what did this what the plaintiffs photographic experts did is they did the blue saturation that that defense counsel talked about they also examined the resolution of the autopsy photos to determine whether that would be sufficient to depict the fiber if it were there as it appeared in we're going as his later video and their conclusion was that the resolution was good enough and that the fiber wasn't there and as for this crack issue bonus himself testified there was a crack in the nail and the autopsy photograph he thought he could see it so you can see the crack in the nail the autopsy photograph you cannot see the blue fiber all of this is disputed with respect to the EMT testimony I believe he did testify about his EMT experience and at multiple trials I don't know if it was all three but I think it was and he testified unequivocally not that he was trained as an EMT while he was in the military he stated unequivocally the military trained me to be an EMT and I worked as an EMT for the military rescuing people his military records demonstrate that that was categorically false and he admitted that in his deposition because there was no basis for him to claim that he was trained by the military to be an EMT or that he worked for the military and okay all right but that gives you impeachment evidence as I believe my brother was suggesting in his questioning under Brady what evidence do you have that that lie was known to the prosecutor or anybody else in the sheriff's department at the time that he offered it to the trial jury if it was known to the prosecutor we wouldn't have a Brady claim then it would be the concealed it Brady requires that the prosecution know that the evidence is false and that it's in this case impeaching but what evidence do you have that somebody besides Norse know knew that this was not true the Carrillo case among other cases Tennyson state that information known only to the police officer and not the prosecutor is suppressed for Brady purposes if it if it never reaches the defense that is that is Brady evidence it is also as I said before evidence of Norse's mental state with regard to the time of death testimony that he cooked up this is these are issues for the jury and that's what I'm trying to say the entire case is disputed so is your is your position that a deputy who responds to homicide is not qualified to offer any type of opinion as to his observations when he manipulates the extremities of the victim or feels for external temperature that that somehow the court must exclude that testimony if the prosecutor asks the deputy what he observed when he arrived on scene no you're right that's not our position deputy nor so hold on why is he not qualified to testify that I picked up the victim's hand and it was fairly mobile and I couldn't tell whether it was warm or cold and I didn't see any evidence of post-mortem lividity setting in are you saying he's not not qualified to testify to that and therefore it's false I am saying he was not qualified I'm saying he knew he wasn't qualified but let's look at lividity lividity lividity is something you could only determine by looking at the underside of the body it is undisputed that Norris did not look at the underside of the body so when he said there's no the body was laying on the ground would and it had been there long enough wouldn't the blood also be cooling underneath the arm so that it would be revealed if someone lifted the arm first of all it's disputed that he lifted the arm he testified that he did not lift the arm second of all no the experts would testify no lividity appears under the body and if you say that there is no lividity that is a wreck because of because of gravity on those parts of the body that are closest to the ground I I'm just having a hard time understanding what your theory is in terms of offering false testimony when the witnesses simply asked what did you see and do in your initial investigation or inspection of the body he was your honor and the answer is he was not simply asked that he testified that to him it appeared as if the victim had just died just like the victims from his military experience who died in his arms and all of that was wrong and it was material to the prosecution and he was his representations regarding his physical examination that never happened is false evidence the Galbraith case states that that is a type of false evidence and before my last word and I'm sorry is that every single type of evidence in this case is direct fabrication and Devereaux and Devereaux's prongs simply do not apply the Ninth Circuit has said that in Spencer it said in Castanets those prongs do not apply when there's some when you're manipulating some other witness when the it's the person who himself who is creating the false evidence the only issue is was it wrong was it erroneous and false and was the defendant deliberately indifferent to the truth or falsity the FN evidence or did he know it was false and all of those matters are disputed on this record a very very time here again thank you both for a very helpful argument and the case is submitted thank you I think we are adjourned for the day this court for this session stands adjourned
judges: Lipez, TALLMAN, LEE